Rosenheim v. Hartsock.

ROSENHEIM *et al.* v. HARTSOCK, *Appellant.*

1. **Married Women**: CONTRACTS: SEPARATE PROPERTY. A married woman, as to her separate property, is to be regarded as a *feme sole*, and as competent to contract debts which will bind that separate property, whether it be named or referred to or not.

2. ———— : SEPARATE ESTATE: LIS PENDENS. The statutory notice of the pendency of the suit in an action to recover on a debt contracted by a married woman, and to affect with a lien lands constituting her separate estate, under the statute regarding equitable rights and liens (R. S., sec. 3217), is constructive notice to one purchasing after it has been filed, and such purchaser takes subject to all the disabilities and burdens as does any other purchaser *pendente lite*.

3. **Jurisdiction**: JUDGMENT: COLLATERAL ATTACK: AMENDMENT. A decree, rendered by a court having jurisdiction of the subject matter of the suit and of the parties, which is both erroneous and irregular in form, is not void and subject to collateral attack. It could be amended, and judicial proceedings which are amendable are not void. Amendability is the *experimentum crucis* of legal validity.

| | |
|---|---|
| 90 | 357 |
| 97 | 213 |
| 90 | 357 |
| 105 | 93 |
| 90 | 357 |
| 110 | 284 |
| 110 | 348 |
| 90 | 357 |
| 114 | 315 |
| 90 | 357 |
| 118 | 322 |
| 118 | 490 |
| 90 | 357 |
| 122 | 470 |
| 90 | 357 |
| 131 | 275 |
| 90 | 357 |
| 71a | 337 |
| 90 | 357 |
| 171 | 3484 |
| 91 | 357 |
| 178 | 6514 |

Rosenheim v. Hartsock.

4. **Judgment Against Married Woman.** The decree in this case held not open to the objection that it is a judgment for money against a married woman.

*Appeal from Linn Circuit Court.* — S. P. HOUSTON, Esq., Special Judge.

AFFIRMED.

*W. H. Brownlee* for appellant.

(1) The contract of a married woman for goods sold and delivered is not a present lien on her separate estate, but is only made so by decree to that effect. Kelley on Contracts of Married Women, p. 238, p. 250, note 1, p. 284, note 1, p. 285 ; *Com. Exchange v. Babcock*, 42 N. Y. 613 ; *Armstrong v. Ross*, 20 N. J. Eq. 109 ; 12 Cent. Law Jour. 289 ; *Davis v. Smith*, 75 Mo. 225 ; *Klenke v. Koeltze*, 75 Mo. 239 ; Freeman on Judg. 196. (2) The judgment is a general judgment against a married woman, and is void. *St. Louis to use, etc., v. Bernoudy*, 43 Mo. 554. (3) It is necessary that the decree should in terms make the debt sued for a charge or lien on the land. Kelley on Married Women, p. 238, note 1, p. 284, note 1, p. 285, and pp. 277, 278 ; 12 Cent. Law Jour. 289 ; *Armstrong v. Ross*, 20 N. J. Eq. 109 ; *Davis v. Smith*, 75 Mo. 225 ; Freeman on Judg. 616.

*H. Lander* for respondents.

(1) The theory that the doctrine of *lis pendens* only applies to cases where a lien exists cannot be sustained. R. S., sec. 3217. "Any equitable right, claim, or lien." *O'Reilly v. Nicholson*, 45 Mo. 166–7 ; *Turner v. Babb*, 60 Mo. 342 ; *McIlwrath v. Hollander*, 73 Mo. 105 ; *Murray v. Lilburn*, 2 Johns. Ch. 444–5 ; 2 Story's Eq. Jur., sec. 908 ; *Newman v. Chapman*, 2 Rand. 93. (2) As to the second point, that the judgment or decree in the case of *Rosenheim et al. v. Julia McQuarters*, is

*in personam* against a married woman, and, therefore, void, it cannot be sustained. *Hoskinson v. Adkins*, 77 Mo. 537, 540-1. (3) As to the third point, that the decree does not in terms charge the debt of Julia Mc-Quarters upon her land, respondents say, that no question is raised as to the jurisdiction of the court in the case of *Rosenheim & Levis v. Julia McQuarters et al.*, over either the subject matter or the person ; that, while the decree in form may be erroneous, it is not void, and, therefore, cannot be impeached collaterally. *Hoskinson v. Adkins*, 77 Mo. 540-1 ; *Gray v. Bowles*, 74 Mo. 419 ; *State ex rel. v. Donegan*, 83 Mo. 374 ; *Yeoman v. Younger*, 83 Mo. 424 ; *O'Reilly v. Nicholson*, 45 Mo. 163. (4) The decree may in form be irregular, erroneous and voidable, but it certainly is not void when considered collaterally. From the agreed case, the notice of pendency of suit appears to have been filed for record before the suit to charge the debt on the land was commenced. No point of objection is made on that account. If such objection were made, the case of *Haughton v. Mariner*, 7 Wis. 224, is referred to by respondents.

SHERWOOD, J. — Ejectment for south half of northwest quarter of section 1, township 57, range 19, Linn county. Pleading in usual form. Both parties claim title under Julia McQuarters, a married woman. The case was tried on this agreed statement of facts :

That Mrs. McQuarters obtained credit with plaintiffs, merchants in St. Louis, for a stock of goods ; that when the debt became due and was unpaid, plaintiffs filed and recorded the equitable statutory notice in the recorder's office in Linn county, as follows :

" Mathilda Rosenheim, Leo Levis, Plaintiffs,

*vs.*

" Julia McQuarters, Jno. McQuarters, Sarah A. Farr,
      Defendants.

" In the Linn Circuit Court.

" To whom it may concern: Take notice that an
action has been commenced in the circuit court of Linn
county, writ returnable as to defendant, Sarah A. Farr,
to December term, 1871, thereof, by said plaintiffs against
said defendants, in which said action the following
described premises are sought to be charged with the
debt therein sued on, and certain fraudulent deeds
among said parties defendant, affecting said land, set
aside.   Description of land as follows :   The south half
of the northwest quarter of section one (1), township
fifty-seven (57), range nineteen (19), Linn county, Mo.

" Mathilda Rosenheim and Leo Levis,

" By Torrance & Burgess, their attorneys.

" Linneus, Mo., Nov. 27, '71.

" Filed for record, Nov. 28, 1871.

" Thos. Kille, Recorder."

That afterwards, the plaintiffs instituted suit in said
court against Julia McQuarters and her husband to
charge said land with said debt, and thereafter, on the
fifth day of December, 1873, obtained a decree against
the defendants therein as follows :

" Linn County Circuit Court Record, December Term,
      December 5, 1873.

" Mathilda Rosenheim, Leo Levis, Plaintiffs,

*vs.*

" Julia McQuarters, Jno. McQuarters, her husband, and
      Sarah A. Farr, Defendants.

" Now at this day come the parties by their counsel
and all and singular the matters are submitted to the
court, which, having seen and heard, the court doth find
that the defendant, Julia McQuarters, is indebted to the

plaintiffs in the sum of nine hundred and thirty-seven dollars and fifty cents, on an account for goods, wares and merchandise sold to her on her own account and credit; and that, at the time thereof, she was the owner, in her own right and as her separate property, of the following described tract of land, being in the county of Linn and state of Missouri, to-wit: The south half of the northwest quarter of section one (1), township fifty-seven (57), range nineteen (19), which she intended to charge with said indebtedness and on account of which she received the credit; which said tract of land she afterwards conveyed to one Boner, and Boner to the defendant, Sarah A. Farr, without any consideration, for the purpose of defrauding her creditors; and that the said Sarah A. Farr now holds the same in trust for them, and the court doth thereupon adjudge and decree that plaintiffs have and recover of and against said defendant, Julia McQuarters, the sum of nine hundred and thirty-seven dollars and fifty cents ($937.50), together with their cost in this behalf laid out and expended; and that said tract of land hereinbefore described be sold, and the proceeds arising from the sale thereof, or a sufficient amount thereof, be applied in satisfaction of this judgment, and that execution issue accordingly."

After filing said notice, and before the final decree, the defendant, Hartsock, took from said Julia McQuarters, and her husband, a deed of trust on said land to secure money borrowed at that time; and after the said decree, the said defendant herein sold the land under his deed of trust and purchased the same, received a proper conveyance therefor, and took possession of the land. He was not a party to the suit to charge the land with the debt of Mrs. McQuarters. The cause was submitted to the court. The plaintiffs, to sustain the issues on their part, introduced in evidence the record of the equity suit and the decree therein, the notice recorded aforesaid, and a sheriff's deed, under the decree, to

plaintiffs. Defendants objected to reading the decree in evidence, for the reason that the same is a general judgment against a married woman, and insufficient to charge the land with the debt, which objection the court overruled, and allowed said decree to be read in evidence, to which ruling of the court in so overruling defendant's objection to said decree, and allowing the same to be read in evidence, defendant at the time excepted. Here plaintiff rested.

Defendant, to sustain the issues on his part, introduced the deed of trust of Julia McQuarters and her husband, and the trustee's deed to defendant, to the reading of which plaintiff objected, for the reason that the evidence so offered was insufficient to defeat plaintiff's title to said land, which objection the court sustained, and excluded said evidence ; to which ruling of the court, in excluding said deeds, the defendant at the time excepted. The court then found the issues for the plaintiff, and rendered final judgment for the recovery of said land against the defendant.

I. The statute in regard to equitable liens provides: "In any civil action, based on any equitable right, claim, or lien, affecting, or designed to affect, real estate, the plaintiff shall file for record, with the recorder of deeds of the county, etc., a written notice of the pendency of the suit, etc.; and the pendency of such suit shall be constructive notice to purchasers or incumbrancers." R. S., sec. 3217. In this case it is idle to speculate as to what is the precise term which should be employed to designate the effect of the act of a married woman who, possessed of a separate estate, takes such a course, or makes such a contract, either express or implied, as enables a court of equity, by proper decree, to have her separate estate sold and applied to the payment of the debt thus contracted. Sometimes the authorities call the result of the act of a *feme covert*, in such circumstances, "*a*

*charge;"* but the name of the act, or the name of the result, is immaterial in this case, as will be presently seen.

II.   It is well settled, in this state, that a married woman, as to her separate property, is to be regarded as a *feme sole*, competent to contract debts which will bind that separate property, whether it be named or referred to or not.   This point is well stated by Bliss, J., who says : "Mrs. Brown's declaration that she did not intend to charge her separate estate when running up a bill in her own name, and upon her own credit, would not release her estate from the charge thereby created. * * * The practical question then, is not whether the *feme covert* expressly designs to charge her separate property, but whether she intends to contract a debt of her own ; for, if she does so, the law, and not her ideas about her property, fixes the liability.   If she contracts upon her own credit, it is the credit of such property, for she has no other. * * * This has long been the settled doctrine of this court." *Miller v. Brown*, 47 Mo. 504.

III.   In the case at bar, all the conditions necessary to invoke equitable interposition were fully supplied by the agreed case : "Mrs. McQuarters obtained credit with plaintiffs, merchants, * * * for a stock of goods."   The credit thus obtained by her created a basis for the subsequent action taken by plaintiffs, which resulted in the decree, and sale thereunder, to plaintiffs.   So that the questions presented by the record are two, and these : First, whether defendant, Hartsock, acquired the legal title to the premises in dispute, despite the pendency of the proceedings to subject those premises to the payment of Mrs. McQuarters' debt.   Second, whether the decree in favor of plaintiffs, in the former proceeding, was sufficient, when consummated by sale, to pass to them the legal title to the land in dispute, provided such title has not pre-

viously passed to the defendant in the manner as aforesaid. If the first point be resolved in favor of the defendant, there is no call to investigate further. But even should this point, be decided adversely to the defendant, still the plaintiffs cannot recover, if it turns out, as claimed by defendant, that the decree on which plaintiffs rely is null, by reason of being a general judgment against a married woman, and also void for that the decree fails to make the debt a lien on the land in controversy.

IV. Now, as to the first point. It will be noticed that the statutory provisions, already quoted, are designed for the protection, not only of equitable liens and claims, but also of "any equitable right." That the plaintiffs were the possessors of an equitable right, cannot, in the light of the agreed facts, and of the authorities cited, successfully be disputed ; if it could be, it would result that a party similarly situated, could have no redress against the separate estate of a married woman. If, however, the possession of such an equity on the part of plaintiffs be conceded, the consequent right to have that equity given recognition and protection, follows as a necessary incident. *Long v. Joplin M. & S. Co.*, 68 Mo., *loc. cit.* 429, 430. And the statute, by the plain, unambiguous terms thereof, gives as full recognition and protection to an *"equitable right,"* "affecting, or designed to affect, real estate," as it does to an "equitable lien" in similar circumstances ; for, otherwise, an equitable right or claim would be without meaning, as well as without the pale of statutory protection. Taking this view of the matter, it should be held that a purchaser of land, where, as here, the statutory notice has been given, purchases under all such equitable disabilities and burdens as does any other purchaser *pendente lite*, and that to him the familiar maxim applies, that "he who takes with notice of an equity takes subject to that equity." The first point must,

therefore, be ruled against the defendant, and he be held to be as fully bound by the results of the suit, whereof he was constructively notified, and during whose pendency he purchased, as he would had he so purchased where the suit was for the enforcement of a lien properly so-called, full-fledged and complete in all its equitable incidents.

V. Now for the second point : The decree was not null. The court had jurisdiction of the subject matter, *i. e.*, of all similar actions. and when the parties to that suit were brought into court by the service of process, that general jurisdiction over the subject matter attached to the particular subject matter involved in that suit, and this gave the court full power to act, and made its proceedings *coram judice.* That the decree was both erroneous and irregular in form, does not go a hair towards impeaching its substantial validity, and it is not subject to collateral attack. *O'Reilly v. Nicholson,* 45 Mo. 163 ; *Gray v. Bowles,* 74 Mo. 419 ; *State ex rel. v. Donegan,* 83 Mo. 374; *Yeoman v. Younger,* 83 Mo. 424; *Hughes, Adm'r, v. Hardesty,* 13 Bush, 364 ; *McIlwrath v. Hollander,* 73 Mo. 105 ; *Fields v. Maloney,* 78 Mo. 179 (dissenting opinion and cases cited). The decree could have been amended, and the rule is, that judicial proceedings which are amendable are not void. *Hardin v. Lee,* 51 Mo. 241, and cases cited. Amendability, in such cases, is the *experimentum crucis* of legal validity. Nor can the decree, when considered as a whole, be regarded as a judgment for money against a married woman. *Keating v. Korfhage et al.,* 88 Mo. 524. Its plain intent and purpose is to subject the separate property mentioned in the decree to the payment of the debt incurred by its owner ; that, and nothing more.

It results from the foregoing views that the judgment should be affirmed. All concur.